[Cite as *State v. Crankfield*, 2014-Ohio-2624.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.   13 MA 122 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| JABRE CRANKFIELD, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:          Criminal Appeal from Youngstown
                                                          Municipal Court, Case No. 06CRB2355.


JUDGMENT:                                         Affirmed.


APPEARANCES:
For Plaintiff-Appellee:                          Attorney Dana Lantz
                                                          Prosecuting Attorney
                                                          Attorney Kathleen Thompson
                                                          Assistant Prosecuting Attorney
                                                          26 South Phelps Street, 4th Floor
                                                          Youngstown, Ohio  44503


For Defendant-Appellant:                     Attorney Rhys Cartwright-Jones
                                                          42 North Phelps Street
                                                          Youngstown, Ohio  44503


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


                                                          Dated:  June 3, 2014

VUKOVICH, J.

{¶1} Defendant-appellant Jabre Crankfield appeals the decision of the Youngstown Municipal Court denying his post-sentence motion to withdraw a no contest plea. His motion claimed that his attorney misadvised him that the offense of child endangering was expungeable when in fact it was not and that he would not have pled to the charge had he known the offense was not subject to expungement. On appeal, he argues only that the trial court erred in failing to hold a hearing before denying his plea withdrawal motion. For the following reasons, the judgment of the trial court is affirmed.

<u>STATEMENT OF THE CASE</u>

{¶2} On September 20, 2006, a child endangering complaint was filed as a result of a September 16 incident involving a six-month old child. It was alleged that appellant violated R.C. 2919.22(A), a first degree misdemeanor, which deals with a parent, guardian, custodian, person with custody or control, or person in loco parentis who creates a substantial risk to the health or safety of a child by violating a duty of care, protection, or support.

{¶3} On September 26, 2006, the warrant was served, the arraignment was held, a personal recognizance bond was issued, and appellant pled no contest to the charge. A presentence investigation was ordered. The trial court's December 4, 2006 sentencing entry imposed a $250 fine, eighteen months of basic probation, reporting until the completion of behavioral counseling, and 100 hours of community service in a children's program. Appellant's probation was successfully terminated on May 26, 2008.

{¶4} On March 18, 2013, nearly five years after his final discharge, appellant with different counsel filed an application to seal the record of this conviction under R.C. 2953.32. An amended application was later filed. A hearing was scheduled for July 1, 2013. On that day, counsel withdrew the application to seal, apparently upon realizing that the offense was not subject to expungement.

{¶5} On July 9, 2013, approaching seven years since the plea was entered, appellant filed a plea withdrawal motion under Crim.R. 32.1 and sought a hearing.

The motion explained that appellant received incorrect legal advice from the attorney who represented him at his plea hearing and he thus entered his plea under the impression that the offense would be expungeable. He cited the United States Supreme Court's *Padilla* case in support of his claim that the failure to properly advise on a crucial collateral civil consequence invalidates a plea. Appellant's affidavit was attached to the motion wherein he asserted that his attorney advised that the charge would be expungeable and that if he had known that it was not, then he would not have entered the plea. The trial court denied the plea withdrawal motion one day after it was filed, and appellant filed a timely appeal.

### ASSIGNMENT OF ERROR

{¶6} Appellant's sole assignment of error provides:

{¶7} "THE TRIAL COURT ERRED IN DENYING MR. CRANKFIELD'S MOTION TO VACATE HIS GUILTY PLEA WITHOUT A HEARING."

{¶8} Appellant urges that his affidavit contained sufficient evidence of ineffective assistance of counsel at the plea stage so that a hearing was required on his plea withdrawal motion. He thus essentially contends the mere allegations that counsel advised him the offense would be subject to expungement and that he would not have entered a plea had he known the offense was not expungeable automatically require an evidentiary hearing. He asserts that his case is comparable to our recent *Howard* case and that the incorrect advice on expungement is similar to the incorrect advice on automatic deportation in the United States Supreme Court's *Padilla* case.

{¶9} The city responds that appellant's affidavit failed to show a manifest injustice. The city states that appellant did not submit a transcript of the plea hearing and thus we are to presume the regularity of those proceedings. However, appellant does not take issue with the trial court's plea colloquy or claim that improprieties occurred at the plea hearing, and he does not suggest that counsel's ineffectiveness occurred on the record.[1]

---

[1]The city's response brief also claims that appellant was barred from filing his motion due to the time limits for post-conviction relief petitions in R.C. 2953.21 and the failure to show an exception to the time limitations in R.C. 2953.23. However, it is well-established that a Crim.R. 32.1 motion to withdraw a guilty plea is a separate and distinct remedy from a civil post-conviction relief petition and that R.C. 2953.21 and R.C 2953.23 do not govern motions under Crim.R. 32.1. *See State v. Bush*, 96 Ohio St.3d

{¶10} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1. This rule establishes a fairly stringent standard for deciding a post-sentence motion to withdraw a guilty plea, which is met only in extraordinary circumstances. *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977). The defendant has the burden of establishing the existence of manifest injustice. *Id.* The decision whether to grant or deny a post-sentence motion to withdraw a plea is within the trial court's sound discretion, and the good faith, credibility, and weight of the movant's assertions in support of the motion are matters to be resolved by that court. *Id.* Undue delay between the event providing the cause for withdrawal and the filing of the motion weighs against the granting of the motion. *Id.*

{¶11} A defendant asserting ineffective assistance in the advice rendered at the plea stage must show deficient performance and prejudice under the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 203 (1985). *See Hill v. Lockhart*, 474 U.S 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The *Hill* Court explained that the prejudice prong in such context requires the defendant to show that, but for the deficient performance of counsel, there is a reasonable probability that he would not have pled guilty *and would have insisted on going to trial*. *Id.* at 59. Notably, the Court added that this will often involve an analysis of whether the correct information would have changed counsel's advice regarding the plea or whether it would have affected the result of a future trial, and the Court contemplated that predictions would have to be made as to the result of a possible trial. *Id.* at 59-60.

{¶12} In *Hill*, the trial court had denied a request for habeas without a hearing where the defendant alleged that his attorney provided erroneous advice as to eligibility for parole under the sentence agreed to in the plea agreement. The United States Court refused to determine whether erroneous advice by counsel as to parole eligibility can be deemed constitutionally ineffective assistance of counsel because the Court found that the allegations did not satisfy the prejudice prong. The Court noted

235, 2002–Ohio–3993, 773 N.E.2d 522, ¶ 11-14. Although timing is a consideration, Crim.R. 32.1 has

that the petitioner did not allege that, had counsel correctly informed him about his parole eligibility date, he would have pled not guilty *and* insisted on going to trial. The Court also stated that the petitioner alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty. The Court concluded that the petitioner's mistaken belief that he would become eligible for parole after serving a third of his sentence would have affected not only his calculation of the time he likely would serve if sentenced pursuant to the plea agreement, but also his calculation of the time he likely would serve if he were convicted after trial. *Id.* at 60.

{¶13} Unlike the *Hill* defendant, appellant did allege that he would not have pled guilty had counsel not rendered the erroneous advice that the offense was expungeable. However, appellant did not specify that he would have taken the case to trial. Although he may believe this is implicit, different plea bargaining tactics are also an option. Notably, appellant pled no contest on the same day that he was served with the warrant and the same day as his arraignment (showing further negotiations with the state were an alternative option to taking the case to trial). (This observation relates to a further analysis infra regarding appellant's failure to make any reference to a potential trial strategy or defense to help establish a manifest injustice.) Appellant also did not allege special circumstances that support a conclusion that he placed particular emphasis on eligibility for expungement in the future. *See id.* And, his mistaken belief as to eligibility would have affected both his future after a no contest plea and his future had he been convicted after a trial. *See id.* Thus, the *Hill* case does not resolve appellant's withdrawal motion merely because he did allege that he would not have pled guilty.

{¶14} In the *Padilla* case relied upon by appellant, the defendant argued in post-conviction filings that his attorney told him that he did not have to worry about his immigration status upon a plea because he had been in the country for so long. In actuality, that defendant was subject to automatic deportation. The Kentucky Supreme Court found that the defendant was not entitled to relief and that an

---

no absolute time limits. *Id.* at ¶ 14.

evidentiary hearing was required, ruling that neither the failure to advise on the possibility of removal nor the incorrect advice is a basis for relief as the Sixth Amendment does not protect a defendant from erroneous advice concerning "collateral consequences" of a plea.

{¶15} The United States Supreme Court refused to address whether collateral consequences advice (versus direct consequences advice) results in ineffective assistance at a plea because of the unique nature of deportation, i.e. its close connection to the criminal process. *Padilla v. Kentucky*, 559 U.S. 356, 365-366, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). The Court concluded that counsel must advise a pleading client of deportation consequences, the deportation consequences of pleading to a drug charge were straightforward, and thus there was clearly deficient performance. *Id.* at 369. The Court characterized the prejudice prong as an inquiry into whether the *results of the proceedings* would have been different. *Id.* at 366. The Court did not then address the question of prejudice to the defendant as it was not passed upon below. *Id.* at 369.

{¶16} Thus, *Padilla* only provides some support for appellant's argument under the deficient performance prong of the ineffective assistance test. The term "some" is used in the preceding sentence because the lack of the future ability to apply for discretionary expungement is not as uniquely and closely connected to the criminal process as automatic deportation due to the conviction of certain listed offenses.

{¶17} "[E]xpungement is a privilege, not a right." *State v. Futrall*, 123 Ohio St.3d 498, 2009-Ohio-5590, 918 N.E.2d 497, ¶ 6. Expungement under R.C 2953.32 is a civil post-conviction remedy. *State v. LaSalle*, 96 Ohio St.3d 178, 2002-Ohio-4009, 772 N.E.2d 1172, ¶ 19. The Supreme Court has pointed out that an application to seal a record of conviction may not be filed until one year after a misdemeanant's final discharge (or three years for a felon). *Id.*, citing R.C. 2953.32(A)(1). "In this regard, an application to seal a record of conviction is a separate remedy, completely apart from the criminal action, and is sought after the criminal proceedings have concluded." *Id.* In *LaSalle*, the Court concluded that the applicable expungement statute is that in

effect at the time the application for expungement is filed. *Id.* (the new law would not apply back to the date of application as it is not retrospective).

{¶18} "[E]xpungement is an act of grace created by the state." *State v. Hamilton*, 75 Ohio St.3d 636, 639, 665 N.E.2d 669 (1996) (and no due process right to advance notice of whether state will appear at the hearing and present arguments). The expungement process allows the trial court to make "largely subjective determinations regarding whether the applicant is rehabilitated and whether the government's interest in maintaining the record outweighs the applicant's interest in having the record sealed." *Id.* at 640 (and the court can gather information from the applicant, the prosecutor, and through independent court investigation by way of probation officials).

{¶19} In *Xie*, the appellate court reversed the denial of a pre-sentence plea withdrawal motion where defense counsel had misinformed defendant of his minimum parole eligibility, which the defendant allegedly relied upon in entering the plea. *State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715 (1992). The Ohio Supreme Court applied the *Strickland* test of deficient performance and prejudice. *Id.* at 524. The Court suggested that parole eligibility is not a subject conducive to concrete advice as the 80% reduction for good behavior may never occur. *Id.* at 524-525, fn.2. The Court then stated that the appellate court should not have second-guessed the trial court's conclusion that the defendant failed to show prejudice as the trial court can choose to reject the defendant's contention that he would not have pled guilty but for the misinformation. *Id.* at 525-527.

{¶20} Thus, even under the liberal pre-sentence motion practice, misinformation on future possibilities at the time of plea does not require withdrawal merely because the defendant states that he would not have pled. Still, *Xie* did not involve a failure to hold an evidentiary hearing.

{¶21} In *Padilla*, the Court refused to find prejudice from the mere incorrect advice prior to the plea as the issue was not ruled upon below. In remanding, the *Padilla* Court did not discuss a hearing requirement even though the Kentucky court

did not hold one. This suggests that prejudice is not automatic from the mere claim that one would not have pled if they knew the right advice.

{¶22} In our *Howard* case relied upon by appellant, the defendant had a factual argument regarding his guilt of carrying a concealed weapon as he wished to show that his permit was not suspended at the time of his arrest, and he had filed a motion to dismiss the charge which was denied. He then entered an *Alford* plea, and appealed on the grounds presented in the motion to dismiss. This court explained that his plea waived that argument. *See State v. Howard*, 7th Dist. No. 10MA154, 2011-Ohio-4754. Appellant then sought to withdraw his plea, urging that his attorney informed him that an *Alford* plea would allow him to appeal the factual issue and that he entered the plea with the intent to appeal that issue. The trial court denied the post-sentence motion without an evidentiary hearing, and the defendant appealed to this court.

{¶23} We stated that a hearing on a post-sentence Crim.R. 32.1 motion is not automatically required. *State v. Howard*, 7th Dist. No. 12MA41, 2013-Ohio-1437, ¶ 10, citing *State v. Snyder*, 7th Dist. No. 08-JE-27, 2009-Ohio-4813, ¶ 15. A hearing is only required if the facts alleged by the defendant and accepted as true by the trial court would require the court to permit a guilty plea to be withdrawn. *Id.* Thus, a defendant is only entitled to a hearing on a motion to withdraw if the trial court determines the defendant alleged facts sufficient to prove a manifest injustice. *Id.*

{¶24} We then pointed out that a defendant is entitled to the effective assistance of competent counsel during the plea bargaining process. *Id.* at ¶ 20, citing *Lafler v. Cooper*, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012) (defendant has the right to effective assistance of counsel in considering whether to accept plea, and thus, the two-part *Strickland* test applies, requiring a showing of deficient performance and prejudice; where defendant rejected plea based on incorrect legal advice on intent and lost at trial). We continued by explaining that erroneous advice by counsel at the plea stage, which induced a decision by a defendant that results in prejudice, is a ground for vacating the plea. *Howard*, 7th Dist. No. 12MA41, ¶ 21.

{¶25} We then found that if the statements in Howard's affidavit were true, then his attorney rendered incorrect advice and he only entered his plea because he thought he would have a chance to raise his argument concerning his concealed carry license on appeal. *Id.* at ¶ 22. We pointed out that the timing of the plea withdrawal motion and the case history also supported Howard's position. *Id.* at ¶ 23. We also disposed of the state's argument that even if counsel rendered erroneous advice there would be no prejudice to Howard, concluding that it appeared that he did have a valid concealed carry license at the time of arrest. *Id.* at ¶ 25. We concluded that the trial court abused its discretion in denying Howard's motion to withdraw his plea without holding a hearing, and we reversed and remanded for an evidentiary hearing on the plea withdrawal motion.

{¶26} Thus, in *Howard*, the defendant explained his lost defense, which he had presented to the trial court from the beginning and which appeared potentially meritorious. The inability to maintain that defense when counsel said he could was the difference between conviction and acquittal. That fact was pertinent to prejudice and to the conclusion that there could be a manifest injustice in that case, requiring a hearing. Here, there is no statement regarding what appellant's defense would have been had he gone to trial. And, the advice in the *Howard* case dealt directly with the motion to dismiss filed in the criminal case and the ability to appeal the issues raised in that motion in the criminal direct appeal. Thus, *Howard* involved legal advice concerning a direct consequence in the criminal action at hand, whereas here, appellant is admittedly concerned only with a collateral civil remedy.

{¶27} We note that the Eighth District has stated that a trial court can deny a plea withdrawal motion without an evidentiary hearing where the defendant claimed that he would not have pled guilty if he knew he would lose his teaching certificate, noting the myriad effects following a conviction. *City of Shaker Hts v. Elder*, 8th Dist. No. 74242 (July 1, 1999) (although that defendant was not actively misadvised of the collateral consequences). The Fifth District found no hearing was required before denying the plea withdrawal motion where the defendant complained that a new law eliminated the ability to expunge a domestic violence conviction. *State v. Rose*, 5th

Dist. No. 04-CA-C-04-027, 2004-Ohio-4433, ¶ 12-15 (noting that the defendant was not misinformed at the time of the plea and that the right to expunge is discretionary). *See also City of Maple Heights v. McCants*, 8th Dist. No. 80128 (Mar. 14, 2002) (no vested right, mere expectancy interest that expungement may be possible; change in law does not invalidate plea even if prosecutor said it could be expunged in the plea negotiations). Although *Rose* did not contain misinformation by counsel, it did deal with a pleading defendant's reliance on the law that he could have his conviction expunged and a subsequent change in the law eliminating expungement.

{¶28} We also note that it is debatable whether misstatements on basic collateral civil consequences would even constitute deficient performance under *Strickland*.[2] As aforementioned, eligibility to attempt expungement in the future (which can change at the whim of the legislature) is not akin to automatic deportation on the conviction of a drug crime. Still, the fact that this case involves only a collateral civil consequence will be considered in evaluating the totality of the circumstances as to the manifest injustice allegation at issue here.

{¶29} Appellant pled no contest to first-degree misdemeanor child endangering in 2006, and the complaint specified that the victim was six months old. The law in effect at the time of appellant's plea (and which is still in effect) stated that the expungement provisions would not apply to: "Convictions of an offense in circumstances in which the victim of the offense was under eighteen years of age when the offense is a misdemeanor of the first degree or a felony." R.C. 2953.26(D) (former), (F) (amended to permit expungement of non-support convictions). A first

[2]*See, e.g., Chaidez v. United States,* 113 S.Ct. 1103, 1112, 185 L.Ed.2d 149 (2013) fn.13 (recapping *Padilla*, noting deportation was not suited to the "collateral versus direct distinction," and expressing that *Padilla* was a special situation); *Padilla*, 559 U.S. at 365-366 (stating that the "collateral versus direct distinction [was] ill suited to that deportation case as deportation was unique and particularly severe), fn.8 (noting the disagreement among courts how to distinguish between direct and collateral consequences of a conviction), and 388-392, fn.1 (Scalia, J., dissenting) (stating that misadvice on collateral consequences is not a constitutional issue requiring application of the *Strickland* test and deportation should not be an exception and noting that the Court has suggested that awareness of "direct consequences" is all that is required to validate plea); *Hill*, 474 U.S. at 57, 60 (declining to rule on whether advice about collateral consequences falls outside the Sixth Amendment's scope and thus also refusing to rule on whether appellate court correctly held that parole eligibility is a mere collateral consequence not subject to a *Strickland* analysis).

degree misdemeanor involving a minor victim has been a bar to expungement since the enactment of 1999 S 13, which went into effect on March 23, 2000.

{¶30} Taking appellant's affidavit as true, there was a rendering of incorrect legal advice regarding expungement and the law upon which the advice was given was clear. Yet, the mere claim in an affidavit that one would not have pled guilty is not enough to allege prejudice in order to require an evidentiary hearing, considering all the facts of this case.

{¶31} For further instance, appellant's affidavit does not swear that he was otherwise eligible for expungement, i.e. there is no averment that he lacks other preclusive convictions or a statement as to his rehabilitation. Although the application for expungement states that he was eligible and the like, this was a motion not an affidavit. And, the application for expungement is not part of the motion for plea withdrawal; nor is his eligibility mentioned in the plea withdrawal motion. Along these lines, expungement is not automatic upon application and is discretionary with a trial court. Also as aforementioned, appellant did not specifically state that he would have insisted on taking the child endangering case to trial. Notably, he pled no contest on the very day that the warrant was served and the arraignment was held.

{¶32} Importantly, there is also no statement as to timeliness in appellant's plea withdrawal motion, and undue delay is a factor in plea withdrawal. *See Smith*, 49 Ohio St.2d at 264. Yes, appellant filed his motion immediately after the expungement hearing during which the motion was withdrawn by counsel apparently on learning that expungement was not permissible. However, appellant's plea withdrawal motion did not explain why he waited so long to seek expungement, which is pertinent and precursory to why he waited so long to seek plea withdrawal. That is, he waited almost five years from the termination of his probation when the statute only required him to wait one year from final discharge. *See* R.C. 2953.32(A)(1).

{¶33} On this point, we note that expungement was permissible in 1999. If expungement were still available in 2006 (at the time of his plea as he allegedly believed it was), by waiting until 2013, one takes the chance that the statute will change (as it did for many defendants in 2000). The Supreme Court has held that it is

the statute in effect at the time of the application for expungement that applies, and some appellate courts have held that the expectancy in the ability to apply for expungement is not a reason to vacate a plea. Again, expungement is not automatic, it is discretionary; expungement statutes change and amendments apply to the date of application (not the date of conviction). Further, a person's record can change, eliminating eligibility in any event.

{¶34} In sum, the bare allegations here are not sufficient, even if taken as true, to allege the extraordinary circumstances necessary for finding a manifest injustice. That is, the single self-serving sentence that he would have gone to trial if he knew he could not apply to expunge his conviction is insufficient to require a per se evidentiary hearing under the non-extraordinary circumstances of this case as they do not illuminate the manifest injustice. Thus, prejudice from an expectation that he could apply for expungement (when in fact he could not) is not automatically existent from a mere statement that he would not have pled if he knew that he would not be eligible to apply for discretionary expungement in the future, i.e. an evidentiary hearing is not automatic merely because a defendant alleges he was misadvised on expungement eligibility and he would not have pled but for that advice. For all of the foregoing, reasons, we uphold the trial court's decision to deny the post-sentence plea withdrawal motion without an evidentiary hearing. The judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
DeGenaro, P.J., concurs.